# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CHARLES W. LAHEY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**M. PATRICIA HACKETT**
**SCOTT A. LOITZ**
**PETER A. TIMLER**
Hackett & Associates, P.C.
South Bend, Indiana

**FILED**

Jun 25 2014, 9:53 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ESTATE OF RUTH M. RUPLEY, | ) | |
| | ) | |
| CHARLES A. RUPLEY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1306-ES-288 |
| | ) | |
| MICHAEL L. RUPLEY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Sr., Judge
Cause No. 71C01-0903-ES-6

**June 25, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Charles A. Rupley appeals the trial court's order concluding the balance of a promissory note executed by Charles and his mother, Ruth Rupley, is an asset of Ruth's Estate. As it was not, we reverse.

## FACTS AND PROCEDURAL HISTORY

In March 2006, Charles and Ruth executed a promissory note:

Charles A. Rupley borrowed $72,500 from Ruth M. Rupley on March 22, 2006. The interest rate is 5. for this note. The note is payable on death to Charles A Rupley.

[Signed by Ruth M. Rupley]

I promise to pay Ruth M. Rupley the sum of $72,500 together with interest at the rate of ___ % per annum. Principal and accrued interest if not sooner paid shall be due and payable on demand or on the death of the either Ruth M. Rupley or Charles A. Rupley, dated March 22, 2006.

[Signed by Charles A. Rupley]

Appellant's App. p. 12.

Ruth died in October 2008. Her will designated Charles and his brother Michael as co-personal representatives. In March 2009, Charles and Michael filed a petition to probate the will. Shortly thereafter, Michael filed a petition to remove Charles as co-personal representative of the estate. In June 2010, the trial court granted Michael's motion and appointed 1st Source Bank as the successor personal representative.

In October 2012, 1st Source Bank filed a Petition Requesting Instructions as to Interpretation and Construction and Disposition of Certain Estate Assets, wherein 1st Source Bank asked the trial court to determine whether the note balance: 1) transferred to Charles at

2

Ruth's death; 2) is an asset of Ruth's estate; or 3) was forgiven by Ruth upon her death.

At a hearing on the petition, Charles argued the Indiana Transfer on Death Property Act applies retroactively to the note and pursuant to the Act, the transfer on death provision in the note transferred it to Charles when Ruth died. Michael, on the other hand, argued the Act does not does not apply retroactively to the note, which constitutes an invalid attempt to make a testamentary transfer. On May 17, 2013, the trial court issued an order summarily instructing 1st Source Bank to include the note as an asset of Ruth's estate.

## DISCUSSION AND DECISION

Charles contends the trial court erred in concluding the promissory note executed by Ruth and Charles in 2006 is an asset of the Estate. We must first determine whether the Transfer on Death Property Act, enacted in 2009, applies retroactively to the 2006 promissory note.

Whether a statute or amendment is applied retroactively to a pending case depends on the legislature's intent. *Chestnut v. Roof*, 665 N.E.2d 7, 9 (Ind. Ct. App. 1996). Absent an express indication otherwise, we presume the legislature intends statutes and amendments to apply prospectively only. *Id.* To ascertain legislative intent, we look at the act as a whole and consider each section with reference to all other sections. *Id.* at 9-10.

The Transfer on Death Property Act clearly indicates that it applies retroactively to a "transfer on death security, transfer on death securities account, and pay on death account created before July 1, 2009." Ind. Code § 32-17-14-2(a). By its terms, the promissory note in this case, which states that it is payable upon death to Charles, is a pay on death account

3

created before July 1, 2009. The Transfer on Death Property Act therefore applies retroactively to it.[1]

We now turn to Ind. Code §32-17-14-4(d), which explains that a statutory transfer on death directive is accomplished in a form substantially similar to the following: 1) insert the name of the owner or owners; 2) insert transfer on death to, TOD, pay on death to, or POD, and insert the name of the beneficiary or beneficiaries. Here, the promissory note includes the name of the owner, Ruth, and the beneficiary, Charles. It includes language directing the note is payable on death to Charles. Because the promissory note meets the statutory requirements of a pay on death account, the note should have transferred directly to Charles upon Ruth's death. It is not an asset of Ruth's estate, and the trial court erred in so concluding.

Reversed.

VAIDIK, C.J., concurs.

RILEY, J., concurs in part and dissents in part with separate opinion.

---

[1] Michael argues that the statute does not apply because retroactive application would "adversely affect a right given to an owner or beneficiary." *See* Ind. Code § 32-17-14-2(a)(1). However, this argument is not persuasive because the Estate is neither an owner (Ruth) nor a beneficiary (Charles) of the promissory note.

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE ESTATE OF RUTH M. RUPLEY, )
)
CHARLES A. RUPLEY, )
)
    Appellant-Respondent, )
)
        vs. )     No. 71A05-1306-ES-288
)
MICHAEL L. RUPLEY, )
)
    Appellee-Petitioner. )

**RILEY, Judge, concurring in result in part and dissenting in part**

I respectfully disagree from the majority's conclusion that the Transfer on Death Property Act, enacted in 2009, retroactively applied to the 2006 Promissory Note. Although I ultimately agree that the trial court erred in concluding that the Promissory Note is an asset of Ruth's estate, I do so for different reasons than the majority.

## I. *Transfer on Death Property Act*

The Transfer on Death Property Act includes an express, legislative statement applying the Act retroactively only in certain situations. Specifically, the Act provides:

> Sec. 2(a) Except as provided elsewhere in this chapter, this chapter applies to a transfer on death security, transfer on death securities account, and pay on death account created before July 1, 2009, unless . . .

I.C. § 32-17-14-2. Pursuant to the Act's provisions, a Promissory Note is explicitly defined as "Property," and therefore, I conclude that the limited retroactive character of the Act does not apply to the contested Note. *See* I.C. § 32-17-14-3(10)(D).

In an effort to nevertheless apply the Act retroactively on the contested Promissory Note, the majority's analysis commences from the same premise that the Act "applies retroactively to a transfer on death security, transfer on death securities account, and pay on death account created before July 1, 2009." *See* Slip Op. p. 3 (citing I.C. § 32-17-14-2(a). Although the majority throughout its opinion characterizes the Note as a Promissory Note and the parties did not contest its legality, the majority, now by a sleight of hand, notes that actually, by its terms, the Promissory Note is a pay on death account. However, the Note cannot be both a Promissory Note and a pay on death account as that would lead to incongruous results within the statute—an outcome never intended by our Legislature. On the one hand, a promissory note, as property, is explicitly excluded from the retroactive application of the Act whereas a pay on death account falls within the limited retroactive exceptions. As its character was never disputed until the majority "re-termed" it, I necessarily conclude that the retroactive character does not apply.

## II. *Asset of the Estate*

Concluding that the Transfer on Death Act is not applicable, I turn to the provisions of Indiana Code section 32-17-11-28, to determine whether the language used in the Promissory Note caused it to become non-testamentary and therefore outside the realm of the Estate.

Indiana Code section 32-17-11-28 states as follows

6

**Provisions in certain agreements nontestamentary; creditors' rights**
Sec. 28. (a) Any of the following provisions in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, pension plan, trust agreement, conveyance or any other written instrument effective as a contract, gift, conveyance, or trust in considered to be nontestamentary, and this title and IC 29 do not invalidate the instrument or any provisions:

> (1) That money or other benefits due to, controlled, or owned by a decedent before the person's death shall be paid after the person's death to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.

> (2) That any money due or to become due under the instrument shall cease to be payable in event of the death of the promise or the promisor before payment or demand.

> (3) That any property that is the subject of the instrument shall pass to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.

(b) This section does not limit the rights of creditors under other Indiana laws.

In analyzing the language of the Promissory Note, the Note appears to be ambiguous on its face, with incongruous language in both halves. If an agreement is ambiguous, we determine whether the ambiguity is patent or latent. *Eckhart v. Davis*, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). A patent ambiguity is apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning. *Id*. Extrinsic evidence is not admissible to explain or remove a patent ambiguity. *Id*. Conversely, a latent ambiguity does not emerge until one attempts to implement the words as directed in the instrument. *Id*. Extrinsic evidence is admissible to explain a latent ambiguity. *Id*. at 498.

Because a patent ambiguity exists, I interpret the Promissory Note before us without the aid of extrinsic evidence. The second part of the Note establishes that "the principal and accrued interest if not sooner paid [--which it was not--] shall be due + payable on demand or on the death of either [Ruth] or [Charles][.]" (Appellant's App. p. 23). As no demand was ever made for payment, pursuant to the Note's language, Ruth's death triggered Charles' obligation to pay the remaining amount due in full. (Appellant's App. p. 23). However, the first part of the Note completes the second part's missing instruction, *i.e.*, who the amount should be paid to. Specifically, the first part of the Note identifies "[t]he note is payable on death to [Charles]." (Appellant's App. p. 23). As such, the Promissory Note falls within the purview of I.C. § 32-17-11-28(1) and therefore becomes non-testamentary. Consequently, I conclude that the trial court erred in concluding that the amount due under the Promissory Note is an asset of the Estate.